UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Boivae Fleming,

               Petitioner

v.

Hutchinson,[1] et al.,

               Respondents

Case No. 2:20-cv-01983-CDS-EJY

**Order Denying First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254**

[ECF No. 22]

Petitioner Boivae Fleming, a Nevada prisoner who was sentenced to 10 to 25 years following a judgment of conviction pursuant to a jury trial for five counts of trafficking in a controlled substance, has filed a counseled first amended petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 22. This matter is before the court for adjudication of all grounds in the amended petition, which allege that Fleming's trial counsel was ineffective for failure to develop an appropriate attorney client relationship, for failure to curtail the involvement of his aunt, and for failure to challenge the State's late disclosure of pivotal discovery; denial of effective counsel based on irreconcilable conflict; denial of due process rights based on failure to record transactions; and denial of due process rights based on destruction of video recording of Fleming's arrest. For the reasons discussed below, I deny the petition and deny a certificate of appealability.

I.      Background

Fleming challenges a 2014 judgment of conviction and sentence imposed by the Eighth Judicial District Court, Clark County, Nevada. ECF No. 31-23. Fleming was charged with five counts of trafficking in a controlled substance, four counts of sale of a controlled substance, one count of possession of a controlled substance with intent to sell, and one count of escape. ECF Nos. 30-13, 30-38.

---

[1] The state corrections department's inmate locator page indicates that Fleming is released on parole. At the end of this order, I kindly direct the Clerk of Court to substitute the Nevada Board of Parole for respondent Hutchinson. *See* Fed. R. Civ. P. 25(d).

Fleming was represented by counsel, Ronald Paulson. During a hearing before the state district court, the State represented that it had extended an offer to Fleming to plead guilty to one count of low-level trafficking and one count of sale of a controlled substance, in exchange for an agreement to have the counts run concurrently and Fleming would have been eligible for probation. ECF No. 30-22 at 7. Fleming rejected the offer. Paulson informed the state district court that Fleming believed there was a video of his arrest and Paulson requested any video evidence, but the State denied that any video existed. *Id.* at 5. Paulson moved to withdraw based on a conflict of interest arising from the public defender's representation of a percipient witness, and the state district court granted his withdrawal. ECF No. 30-26.

Elizabeth Quillin[2] was then appointed as Fleming's counsel. On the first day of trial, Quillin represented to the state district court that the State extended an offer to Fleming to plead guilty to one count of mid-level trafficking with a stipulation of a minimum sentence of two to five years. ECF No. 40-1 at 9. Fleming rejected the offer. Quillin further put on the record that she believed police reports were missing from discovery and that she received a missing property report the Friday prior to trial. *Id.* at 10–11. In addition, Quillin noted to the state district court that she believed that Fleming was "unduly influenced" by the legal advice he was getting from his aunt, who was a law student. *Id.* at 12. Counsel represented that it was difficult to prepare for trial and strategize with Fleming. *Id.*

The state district court addressed Fleming and emphasized the sentencing exposure and that he faced "25 to 30 years on the low end and life on the top end" if convicted of all charges. *Id.* at 15–17. The state district court briefly discussed that a detective would be testifying regarding the drug transactions with Fleming and asked if he would like to speak to his attorney. *Id.* Fleming declined and stated that he was ready to proceed. *Id.*

A jury found Fleming guilty of five counts of trafficking in a controlled substance, four counts of sale of a controlled substance, one count of possession of a controlled substance with

---

[2] I note that Fleming has spelled counsel's name as both Quillin and Quillan.

intent to sell, and one count of escape. *Id.* Fleming appealed and the Supreme Court of Nevada vacated in part remanding to the state district court with instructions to vacate the lesser-included offenses of sale of a controlled substance and possession of a controlled substance. ECF No. 33-12. On remand, the state court entered an amended judgment of conviction. ECF No. 33-19. The state district court sentenced Fleming to 10 to 25 years of imprisonment with the counts running concurrently. ECF No. 31-23.

Fleming filed a pro se state habeas petition seeking post-conviction relief as well as three supplemental petitions. ECF Nos. 33-30, 33-36, 33-40, 33-41. Following appointment of counsel and an evidentiary hearing, the state court denied Fleming's state habeas petition. ECF No. 34-24. The Nevada Court of Appeals affirmed the state court's denial of relief. ECF No. 34-44.

Fleming initiated this federal habeas proceeding pro se. ECF No. 1. Following appointment of counsel, Fleming filed his first amended petition raising six grounds for relief. ECF No. 22.

The respondents moved to dismiss certain claims as unexhausted. ECF No. 32. I granted the motion in part and denied it in part, finding Ground 6 unexhausted and deferred consideration of whether Fleming could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of Grounds 1 and 3. ECF No. 44. Following state court proceedings, Ground 6 was dismissed. ECF No. 50.

## II.    Governing standard of review

### A.  Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### B. Standard for evaluating ineffective assistance of counsel claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring the petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide

4

range of reasonable professional assistance." *Id.* at 689. It is the petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

### C.  Standard for evaluating procedurally defaulted claims

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). Where a petitioner fails to do so and therefore "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,"

federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For claims of ineffective assistance of trial counsel, petitioners may overcome cause for procedural default of the claim where (1) the claim of ineffective assistance of trial counsel is a "substantial" claim; (2) the "cause" consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective assistance of trial counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."[3] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 14, 18; citing *Coleman*, 501 U.S. 722). An ineffective assistance of trial counsel claim "is insubstantial" if it lacks merit or is "wholly without factual support." *Martinez*, 566 U.S. at 14-16 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

"[T]he standard for evaluating the underlying trial counsel IAC claim during the *Martinez* prejudice analysis is not as stringent as that required when considering the merits of the underlying [*Strickland*] claim." *Leeds v. Russell*, 75 F.4th 1009, 1017-18 (9th Cir. 2023) (citing *Michaels v. Davis*, 51 F.4th 904, 930 (9th Cir. 2022) ("[A] conclusion on the merits of [a trial counsel IAC] claim under *Strickland* holds a petitioner to a higher burden than required in the *Martinez* procedural default context, which only requires a showing that the [trial counsel IAC] claim is 'substantial.' ")). While review of trial counsel's actions in a *Martinez* prejudice analysis is conducted under a more relaxed standard, the *Strickland* standard is applied with full force when considering the actions of initial postconviction review counsel for a *Martinez* cause analysis. *See Leeds*, 75 F.4th at 1022. The requirements of cause and prejudice are distinct but, "[t]he analysis of

---

[3] Nevada prisoners are required to raise IAC claims involving trial counsel in an initial state-postconviction petition, which is the initial collateral review proceeding for purposes of applying *Martinez*. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

whether both cause and prejudice are established under *Martinez* will necessarily overlap," as "each considers the strength and validity of the underlying ineffective assistance claim.'" *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). On all such issues, if reached, the court's review is de novo. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1246-48 (9th Cir. 2013); *Atwood v. Ryan*, 870 F.3d 1033, 1060 n.22 (9th Cir. 2017).

## III.   Discussion

### A.   Ground 1—Ineffective assistance re: failure to develop relationship

In Ground 1, Fleming alleges that trial counsel rendered ineffective assistance for failure to develop an appropriate relationship with Fleming or properly curtail the involvement of Fleming's aunt. ECF No. 22 at 9. He asserts that Quillin failed to appropriately manage his aunt because Quillin allowed his aunt to hijack the case and offer detrimental advice. *Id.* Quillin allowed Fleming's aunt to be present at every meeting she had with Fleming. ECF No. 75 at 7. Quillin spoke to Fleming's aunt about his case before speaking with Fleming himself. *Id.* Quillin discussed the challenges of the case with Fleming's aunt. *Id.*

Following trial, Quillin moved for a new trial. ECF No. 22 at 10. Quillin moved to withdraw as counsel and informed the state district court that Fleming's aunt's involvement in the case had "detrimentally impacted counsel's ability to represent" her client. *Id.* After Quillin's withdrawal as counsel, another attorney, Conrad Claus ("Claus"), represented Fleming and at his first appearance, Claus informed the state district court that Fleming was getting advice from a relative. *Id.* Claus filed a motion for new trial based on Fleming's aunt's conduct with a declaration from Quillin. *Id.* at 11. In her declaration, Quillin provided that she believed Fleming rejected the plea offers because of his aunt.

Ground 1 is not substantial within the meaning of *Martinez.* 566 U.S. at 14. Fleming fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial because he fails to demonstrate deficient performance or resulting prejudice under *Strickland.*

There is no Sixth Amendment right to "a meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). *See also McGill v. Shinn*, 16 F.4th 666, 690 (9th Cir. 2021) (rejecting claim counsel was ineffective for failing to develop a relationship of trust or rapport with the accused and his family). Defense counsel owes "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688.

The Court is not convinced that trial counsel's performance fell below the *Strickland* standard. *See also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.") Despite Fleming's assertions that his counsel failed to restrict his aunt's involvement in his case, his counsel informed the state district court that Fleming was "unduly influenced" by the advice he was getting from his aunt, who was a law student, while the State's offer was still pending. ECF No. 40-1 at 12. The state district court reiterated the sentencing exposure to Fleming if he was convicted of all charges and discussed concern that Fleming may regret rejecting the plea offers to no avail. *Id*. at 15–17. Fleming's complaints that his trial counsel's actions caused Fleming to value his aunt's legal advice over counsel's do not furnish a basis for a finding of either deficient performance or prejudice. Because Fleming's claim is not substantial, he fails to overcome the procedural default of Ground 1. Ground 1 is dismissed as procedurally defaulted.

### B. Ground 2—Irreconcilable conflict

In Ground 2, Fleming alleges that he was denied his Sixth Amendment right to effective counsel because he was represented by counsel that had an irreconcilable conflict. ECF No. 22 at 12–16. Fleming asserts that the state district court was aware that there was an issue between Fleming and Quillin and that Fleming was being guided by his aunt's advice, but the state district court failed to investigate the breakdown in the relationship between Fleming and his counsel.

8

ECF No. 75 at 16. He alleges he was effectively denied his right to counsel because of the complete breakdown in the attorney-client relationship.

### 1. Standard of review

Because Fleming presented both the operative facts and the relevant law to the state appellate court, I found that Ground 2 was exhausted on direct appeal. ECF No. 44 at 3–4. The respondents assert that the Nevada Court of Appeals construed the claim as alleging an ineffective assistance of counsel claim and rejected the claim as procedurally defaulted. ECF No. 63 at 18. Fleming argues that the Nevada Court of Appeals did not consider the merits of Ground 2, and that the claim should be considered de novo.

When a state court rejects a claim on the merits without articulating a specific rationale, AEDPA's deferential standard of review continues to apply. *Richter*, 562 U.S. at 97–100 (when state court summarily denies a claim without discussion, federal habeas court presumes that the claim was adjudicated on its merits); *Johnson v. Williams*, 568 U.S. 289 (2013) (*Harrington v. Richter* presumption applies when the state court's decision denying relief discusses some claims, but is silent with respect to other claims). In that situation, the federal court must consider the arguments or theories that could have supported the state court's decision; "and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Richter*, 562 U.S. at 102.

### 2. Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. However, the Sixth Amendment does not "guarantee[ ] a 'meaningful relationship' between an accused and his counsel." *Morris*, 461 U.S at 14; *see also United States v. Moore*, 159 F.3d 1154, 1158–59 (9th Cir. 1998) (fashioning a three-part test to determine whether a conflict rises to the level of

being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the court]; and (3) the timeliness of the motion").

Fleming and Quillin's relationship appears to have been strained to an extent based on Fleming's aunt's involvement and Fleming's decisions to deny the State's plea offers. The record, however, does not support a finding of a complete breakdown in Fleming's relationship with his trial counsel. After Quillin informed the state district court that Fleming was being influenced by his aunt, and the state district court discussed with Fleming the plea offer, his sentencing exposure, and the likely testimony at trial. Fleming responded that he understood, did not wish to speak with counsel, and wanted to proceed to trial. Fleming did not move to substitute counsel, allege that he was unable to communicate with counsel, or otherwise make representations that would demonstrate a complete breakdown between him and Quillin. Based on the foregoing, in the alternative, I would nonetheless deny relief on de novo review.

In addition, the Ninth Circuit has determined that "[e]ven if [a petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed …, [a] irreconcilable-conflict claim would still fail" because the Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019).

The Nevada appellate court's denial of Fleming's claim regarding the conflict with his counsel was objectively reasonable. Fleming is denied federal habeas relief for Ground 2.

### C. Ground 3—Ineffective assistance re: failure to challenge late disclosure of evidence

In Ground 3, Fleming alleges trial counsel rendered ineffective assistance for failure to challenge the State's late disclosure of discovery. ECF No. 22 at 16–19. On the Friday before trial, Quillin inquired as to the chain of custody related to Fleming's final drug transaction and, in response, the prosecution sent her the relevant property report. Quillin also received a chemist report on the Friday before trial. On the first day of trial, Quillin informed the state district court

that she believed police reports related to the final drug transaction were missing. Fleming asserts that Quillin should have challenged the late disclosures and should have moved to exclude the evidence.

Ground 3 is not substantial within the meaning of *Martinez*. 566 U.S. at 14. Fleming fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial because he fails to demonstrate deficient performance or resulting prejudice under *Strickland*.

Fleming has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. It is reasonable to find that counsel made the strategic decision that a motion to exclude the evidence would have been unsuccessful, particularly considering a Nevada state district court's "broad discretion" to remedy violations of the state's discovery provisions when the defendant cannot show the prosecution "acted in bad faith or that the nondisclosure caused substantial prejudice to the defendant." *Evans v. State*, 28 P.3d 498, 418 (Nev. 2001). Even if trial counsel challenged the late disclosure of the reports, Fleming fails to demonstrate a reasonable probability of a different outcome. Because Fleming's claim is not substantial, he fails to overcome the procedural default of Ground 3 and Ground 3 is dismissed as procedurally defaulted.

### D. Ground 4—Due Process violation

In Ground 4, Fleming alleges that his due process rights were violated because the State failed to record the drug transactions. ECF No. 22 at 19–20. Detective Brian Grammas testified at trial that the police did not video record the transactions with Fleming. Fleming alleges that Grammas testified that low-level sales were not recorded. Fleming asserts that the police failed to follow their own procedures because the transactions were considered high-level sales.

At trial, Fleming presented a defense based on an alibi. He asserts that the jury therefore had to rely on the recollections of the officers. He further asserts that the undercover officer on the case, Detective Russell Backman, generally wrote his reports a month after the transactions took place.

### 1. State court determination

Although the claim raised in Ground 4 was presented to the state appellate court, the Nevada Court of Appeals summarily rejected the claim. Fleming argues that the Nevada Court of Appeals did not consider the merits of the claim because the state appellate court rejected it as not preserved for appeal, and that the claim should be considered de novo.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories … could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

### 2. Analysis

The state appellate court's summary rejection of Ground 4 was neither contrary to nor an objectively unreasonable application of clearly established federal law as determined by the United State Supreme Court.

The United States Supreme Court has "consider[ed] what might loosely be called the area of constitutionally guaranteed access to evidence." *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988). The Court recognized that the Due Process Clause "requires a different result when we deal with the

failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57. In those instances, the failure to preserve this "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *Id*. at 58.

Although Fleming asserts that the police failed to follow their own procedures, he does not show that the State acted in bad faith. Grammas testified at trial that "[i]t would be an exception to use recordings, video or audio," unless they were working with the DEA task force. ECF No. 30-41 at 112. He testified that their equipment did not have recording capability. *Id*. at 111–12.

In addition, the State acted in bad faith only if it had reason to know that recordings were potentially useful evidence to Fleming. *See Youngblood*, 488 U.S. at 58 (bad faith is confined to "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant"). Although Fleming contends that the recordings would have benefitted his defense, any recordings may have just as easily identified or otherwise incriminated Fleming. Detective Backman testified that he witnessed Fleming handing him narcotics and taking money. Detective Grammas testified that he was able to locate Fleming, that Fleming sold narcotics to Backman, and that with subsequent investigation, they determined Fleming's true name and identifying information. Fleming argued at trial that the State only had the recollection of two detectives and highlighted the lack of video and audio recordings. Thus, the lack of recordings likely offered a windfall to Fleming, allowing him to note and highlight the State's failure to offer any audio or visual recordings tying him to the controlled buys. Regardless, the record does not suggest that the State acted in bad faith. On that basis, I would nonetheless deny relief, in the alternative, on de novo review. Fleming is denied federal habeas relief for Ground 4.

### E. Ground 5—Destruction of video of arrest

In Ground 5, Fleming alleges that his arrest was videotaped and that the police beat him. ECF No. 22 at 21. He asserts that the State violated his due process rights by not preserving any video of his arrest. *Id*. at 22. Fleming informed the state district court that he contacted Internal Affairs and that he believed there was an exculpatory video recording. *Id*. at 21. The state district court ordered the production of any video tape evidence that existed. *Id*.

#### 1. *State court determination*

On appeal of his state habeas petition, the Nevada Court of Appeals held:

> Fleming claims the district court erred by denying his postconviction "Motion for Las Vegas Metropolitan Police Department to Disclose All Video Tape Evidence Concerning the Arrest of the Defendant Boivae Fleming on May 21, 2007." The record demonstrates the district court held a hearing on this motion and ordered it "granted to the extent of the video existing." Accordingly, we conclude Fleming's claim is belied by the record.

ECF No. 34-44 at 4.

#### 2. *Analysis*

The Nevada Court of Appeals reasonably determined that Fleming was not entitled to relief. The record belies Fleming's claim that there was video evidence of the police beating him during his arrest. Fleming has not shown that the exclusion of video evidence of his arrest violated due process. The Nevada Court of Appeals' ruling was not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Fleming is denied habeas relief for Ground 5.

### F. Certificate of appealability

This is a final order adverse to Fleming. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2022). Pursuant to

28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, the Court finds that a certificate of appealability is unwarranted.

## IV.    Conclusion

I therefore order that petitioner Boivae Fleming's first amended petition for writ of habeas corpus under 28 U.S.C. § 2254 **[ECF No. 22] is denied**.

I further order that a certificate of appealability is denied.

The Clerk of Court is kindly directed to substitute the Nevada Board of Parole for respondent Hutchinson, enter judgment, and close this case.

Dated: April 27, 2026

_____
Cristina D. Silva
United States District Judge

15